IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DORIS ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 3:08-CV-1022-WKW [WO] |
| ) | |
| LEE COUNTY, a political subdivision ) | |
| of the state of Alabama; COREY ) | |
| WELCH, in his individual and official ) | |
| capacity as jail administrator; JAMES ) | |
| EASON, in his individual and official ) | |
| capacity as mental health officer; ) | |
| SARGENT PARKETT (first name ) | |
| unknown), in his individual and ) | |
| official capacity; CORPORAL HEIL ) | |
| (first name unknown), in his individual ) | |
| and official capacity, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On July 26, 2007, Mark Anderson committed suicide while confined as a pretrial detainee in the Lee County Jail. Doris Anderson, as administrator of his estate, brought this suit against Lee County, Lee County Jail Administrator Corey Welch, jail mental health officer James Eason, and correctional officers Tim Parkett and D'metrius Hill (identified in the complaint as "Corporal Heil"). (Doc. # 37.) Ms. Anderson asserts federal civil rights claims, pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, and a state-law tort claim. Each of the Defendants has filed a motion to dismiss for failure to state a claim upon which relief may be granted. (Docs. # 39, 40, 47); *see* Fed. R. Civ. P. 12(b)(1), (b)(6). Briefing of the motions to dismiss is complete, and they are ripe for resolution. Upon

consideration, Lee County's motion is due to be granted, and the individual Defendants' motions are due to be granted in part and denied in part.

## I. FACTS

Ms. Anderson alleges the following facts in her second amended complaint. (Doc. # 37.) Mr. Anderson, who was a drug addict living in a rehabilitation center, was arrested on a burglary charge and detained in the Lee County Jail on July 24, 2007. Because he either expressed suicidal ideations or exhibited suicidal behaviors, he was placed in a "suicide cell" and on "suicide watch." (Doc. # 37 ¶¶ 12-13.) On July 26, 2007, Mr. Anderson succeeded in hanging himself in his cell, a process that took "as much as" twenty minutes to "complete." (Doc. # 37 ¶¶ 14-15.) While the suicide attempt was ongoing, an inmate in a neighboring cell called for help, which took "a significant amount of time" to arrive. (Doc. # 37 ¶ 16.) Department employees saw or should have been able to see the suicide attempt via video surveillance. (Doc. # 37 ¶ 17.) Despite being placed in a suicide cell on suicide watch, the call for help from the neighboring inmate, and the video surveillance, Mr. Anderson was able to commit suicide. (Doc. # 37 ¶ 18.)

Based on these alleged facts, Ms. Anderson asserts six counts against one or more of the defendants: (I) A Section 1983 claim against Lee County for a violation of Mr. Anderson's Eighth Amendment right to be free from cruel and unusual punishment, as applied to the defendants through the Fourteenth Amendment; (II) A Section 1983 claim against Lee County for deprivation of Mr. Anderson's "Fifth and Fourteenth Amendment

Rights"[1] not to be deprived of his life without due process of law; (III) a supplemental state-law claim for wrongful death, pursuant to Ala. Code § 6-5-410; and (IV)-(VI), all of which are titled "42 U.S.C. § 1983" but which contain further factual allegations as to the individual defendants and do not specifically cite any substantive constitutional or statutory provision.

Section 1983 "is merely a vehicle by which to bring" claims for violations of federal constitutional and statutory rights, and "does not create any substantive federal rights." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1299 (11th Cir. 2007). Each count, however, contains the language of "deliberate indifference," which is a type of Fourteenth Amendment due process claim. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Ms. Anderson's complaint would have been clearer if it had an enumeration of which defendants are being sued on which causes of action, but, as Defendants did not raise this issue in their motions to dismiss, and it is apparent to the court that Ms. Anderson means to raise a Fourteenth Amendment due process claim against the personal defendants, the court will proceed to examine the merits of the counts.

Count IV alleges that Jail Administrator Corey Welch was personally involved in the "processing and/or incarceration" of Mr. Anderson, knew of his suicidal tendencies, and was deliberately indifferent to those tendencies, resulting in Mr. Anderson's suicide. It further alleges that Mr. Welch has responsibility to develop and implement suicide prevention

---

[1] The Fifth Amendment right to due process applies against the federal government, not the states. As there are no federal defendants in this case, the court will focus on the alleged Fourteenth Amendment violation. The substantive inquiries are identical.

3

policies within the jail, but he failed to adequately do so. (Doc. # 37 ¶¶ 30-32.) Count V alleges that all four individual defendants "either caused or allowed" Mr. Anderson's cell to remain in a condition that was "defective and/or hazardous" for a suicidal inmate, and further that they all failed to develop policies regarding the conditions of suicidal inmates' cells. (Doc. # 37 ¶¶ 33-35.) Count VI alleges that Defendants Parkett and Hill were working on the day of Mr. Anderson's suicide, and acted with deliberate indifference to his suicidal tendencies and threats. They allegedly failed to implement the jail's suicide prevention policies. (Doc. # 37 ¶¶ 36-38.)

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to" the plaintiff. *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). "[D]etailed factual allegations" are not required, but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

*A. Lee County*

Defendant Lee County's motion to dismiss (Doc. # 39) points out that, under Alabama law, counties have no duty with respect to jails other than to build and physically maintain them. *See* Ala. Code § 11-14-10; *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1026 & n.6 (11th Cir. 2001) (en banc). The complaint in this case bears something in common with the complaint in *Marsh*, as both "make [their deliberate indifference] claim against Defendants in general, which would seem to include the County," even though "[n]othing indicates . . . that the County was involved in the alleged deprivation of medical care." *Id*. at 1026 n.6. Indeed, the complaint in this case provides no specific allegations at all as to Lee County's role in Mr. Anderson's death, offering only the kind of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" rejected by the Supreme Court in *Iqbal*. 129 S. Ct. at 1949. The County does more than Ms. Anderson to flesh out the complaint, suggesting that it rests on a theory of *respondeat superior*. (Doc. # 39.) If this is so, it must fail, because it is well established that counties in Alabama do not supervise jailers, who are employees of the sheriff, an independent political entity. *Turquitt v. Jefferson County*, *Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998) (en banc). Even if the County were the employer of the individual defendants as a matter of state law, Section 1983 does not permit municipal liability on a *respondeat superior* theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-92 (1978).

5

In her response to the County's motion to dismiss, Ms. Anderson asserts, for the first time, that the County could have violated its duty to maintain the Jail by a failure to maintain the suicide cell where Mr. Anderson was kept. These allegations appear nowhere in the second amended complaint, and Ms. Anderson has not moved to amend that complaint. Their appearance in briefing cannot bolster the content of the complaint itself, even assuming they would be sufficient to state a claim. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).

Accordingly, the court finds that Lee County's motion to dismiss (Doc. # 39) is due to be granted, and Counts I and II of the complaint will be dismissed.[2]

### B. Individual Defendants[3]

The individual defendants raise the defense of qualified immunity. "The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages" unless they have violated a clearly established constitutional right. *Townsend v. Jefferson County*, 582 F.3d 1252, 1258 (11th

---

[2] Count I, which alleges an Eight Amendment violation, fails in its own right because Mr. Anderson was by all accounts a pretrial detainee, and not a sentenced inmate, at the time of his death. For a pretrial detainee, however, Fourteenth Amendment claims serve the same function and are subject to an identical analysis in the deliberate indifference context. *Mann*, 588 F.3d at 1307. Therefore, the preceding analysis is necessary for Count II regardless of the disposition of Count I.

[3] As the court's previous order governing the filing of the current complaint noted, Ms. Anderson earlier conceded that all claims against the four personal defendants in their official capacities should be dismissed. (Doc. # 36 at 4 n.3.) Nonetheless, the caption of the current complaint continues to name the four personal defendants in both their individual and official capacities. To the extent that Ms. Anderson continues to press claims against Defendants Welch, Eason, Parkett, and Hill in their official capacities, those claims are due to be dismissed in light of the previous order. The discussion in this opinion relates only to the Defendants in their individual capacities. The parties are directed to modify the style of the case accordingly in future pleadings.

6

Cir. 2009) (quotation omitted). Because qualified immunity, as the name suggests, provides actual immunity from suit, rather than simply a defense to liability, its applicability should be resolved "at the earliest possible stage in litigation." *Id*. (quotation omitted). Accordingly, it may be raised at the motion-to-dismiss stage, but "is typically addressed at the summary judgment stage of a case," and all a court at this stage is permitted to do is determine whether the complaint "allege[s] the violation of a clearly established constitutional right." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

A qualified immunity determination requires evaluation of a multi-part test. First, a defendant must establish that he or she was acting within his discretionary authority as a public employee when the conduct in question occurred. *Townsend*, 582 F.3d at 1258. Next, a plaintiff must demonstrate "'that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" *Id*. (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)). Before *Pearson*, courts were required to conduct the constitutional inquiry in order, that is, to decide whether a right existed before deciding whether it was clearly established. Now, however, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id*. (quoting *Pearson*, 129 S. Ct. at 818).

In this case, it is undisputed that all the individual defendants were acting within their discretionary authority during the events in question, so the burden shifts to Ms. Anderson to show that Mr. Anderson's clearly established constitutional rights were violated**.** *Id*. The

7

substantive constitutional claim made by Ms. Anderson is that Mr. Anderson was deprived of his Fourteenth Amendment right to due process because Defendants were deliberately indifferent to his medical needs. Such a claim requires proof that he "had a serious medical need, the [Defendants] were deliberately indifferent to that need, and [his] injury was caused by the [Defendants'] deliberate indifference." *Id.* Proof of deliberate indifference requires a demonstration that Defendants had "'(1) subjective knowledge of a risk of serious harm[, and]; (2) disregard[ed] . . . that risk; (3) by conduct that is more than [gross] negligence.'" *Id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (final alteration in original)).

If the complaint does allege a constitutional violation, it must be one that is "clearly established" in order to survive a qualified immunity defense. *St. George*, 285 F.3d at 1337. A constitutional violation is "clearly established" if "it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted." *Harper v. Lawrence County, Ala.,* No. 09-10226, 2010 WL 21179, at *4 (11th Cir. Jan. 6, 2010) (published) (internal quotation omitted). Such clarity may come from "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Id*.

Finally, the standard of review applicable to a motion to dismiss is "tightened . . .in section 1983 cases where qualified immunity is at issue." *Id*. at *3; *see Danley*, 540 F.3d at 1314 ("Under the heightened pleading requirement, the relevant facts must be alleged with

some specificity."). The court must be able to determine whether the facts set out in the complaint "indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).

### *1. Supervisory Capacity Claims*

It is helpful to address a subset of Ms. Anderson's Section 1983 claims separately, as the law governing them is different from that governing the rest. In Count V, Ms. Anderson claims that all four individual defendants "either caused or allowed the decedent's jail cell to remain in a defective and/or hazardous condition" for a suicidal inmate, and "personally failed to develop and implement policies and procedures with regard to the condition of cells in which suicidal inmates were housed . . . ." (Doc. # 37 at 7.)

As the Eleventh Circuit has noted, "supervisory liability" claims are a unique subset of deliberate indifference claims generally. *Harper*, 2010 WL 21179, at *6-7. Absent personal participation in the conduct giving rise to the injury, supervisory liability exists only when there is a "casual connection between" unconstitutional conduct and the supervisory defendant's actions. There are three ways to show such a connection: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation"; [2] when "a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights[;] or [3] when facts support an inference that the

9

supervisor directed the subordinates to act unlawfully." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal punctuation and quotation marks omitted).

Here, there is no allegation that there was widespread abuse that would have put a supervisor on notice of a need to correct a constitutional violation, nor does the Complaint allege that a supervisory defendant specifically directed his subordinates to act unlawfully, or knew that they would do so and did not stop them. Thus, only the second basis for establishing a causal connection – the existence of a "custom or policy" resulting in deliberate indifference – is at issue here.

As Defendants point out, while Count V alleges that Defendants "failed to develop policies and procedures with regard to the condition of cells in which suicidal inmates were housed," the factual basis for Count V appears to be entirely that Mr. Anderson was in fact able to commit suicide in his cell. Defendants describe this Count as setting forth no more than a *res ipsa loquitur* claim based on the mere fact that Mr. Anderson killed himself. That is something of an overstatement, as the language of the Count does allege that he was able to do so because of policies and procedures that kept his cell in a "dangerous and hazardous" condition.

Ultimately, though, the court concludes that this Count fails to state a claim because it does not connect its assertions to a constitutional cause of action. In *Cottone*'s words, it is not any "custom or policy" resulting in harm that leads to supervisory liability, but rather a "custom or policy . . . result[ing] in deliberate indifference to constitutional rights." 326

F.3d at 1360-61. Yet here, Ms. Anderson alleges only that the "policies and procedures" at issue led to cells being maintained in a "dangerous and hazardous condition." (Doc. # 37, ¶ 34.) The Complaint does not state, and Ms. Anderson advances no argument, that the simple existence of "dangerous and hazardous" cells constitutes deliberate indifference of constitutional proportions.[4] Ms. Anderson's briefing cites no cases in which a deliberate indifference claim in a jail suicide case was sustained based solely on the condition of the cell in which the inmate was kept. None of the factual averments in the Complaint (¶¶ 12-18) relates to this Count. While the court believes that this Count fails to state a claim even under the ordinary civil pleading standard, the heightened pleading standard imposed in qualified immunity cases makes this Count particularly infirm. "[D]angerous and hazardous" are vague labels that do not put Defendants on notice of what precisely is being alleged, and "the relevant facts" are not "alleged with some specificity." *Danley*, 540 F.3d at 1314.

Count V does not allege the violation of a constitutional right, and it is unnecessary to proceed any further in the qualified immunity analysis. Accordingly, the court concludes that Count V of the Complaint does not state a claim upon which relief may be granted, and is due to be dismissed. As he is named only in this Count, this will result in the dismissal of Defendant Eason from the case.

---

[4] Defendants analyze this claim as if it were asserting a so-called "conditions of confinement" claim. (Doc. # 58.) If that is what Ms. Anderson meant to assert, it would fail, because such claims are appropriate "for environmental conditions that generally affect the inmates in the jail," not claims for individualized constitutional violations against particular inmates. *Danley*, 540 F.3d at 1309.

Count IV is confusingly pled; it appears to raise both supervisory capacity and personal participation claims against Defendant Welch. Once again, the claim rests on the "custom or policy" basis for a supervisory capacity deliberate indifference claim. This time, however, it alleges that Defendant Welch was responsible for the full set of policies regarding suicidal inmates, rather than merely the "policy" giving rise to the state of Mr. Anderson's cell. While this is in some respects a more colorable custom or policy claim than that in Count V, the court finds that it remains too vague and conclusory to properly allege a cause of action. Once again, none of the specific factual averments relates to this claim, and it does little more than restate the elements of the cause action, in contravention of *Twombly* and *Iqbal*. The court therefore concludes that, to the extent Count IV is meant to raise a supervisory liability claim against Defendant Welch, it fails to do so, and is due to be dismissed as to any claim for supervisory liability.

### 2. *Personal Participation Claims*

In Counts IV and VI, Ms. Anderson asserts "personal participation" deliberate indifference claims against Defendants Welch (Count IV), Parkett, and Hill (Count VI). *See Harper*, 2010 WL 21179, at *4. As explained earlier, there are three prongs to such a claim. *See id.* First, the Complaint sufficiently alleges that Defendants Welch, Parkett, and Hill had "subjective knowledge of a risk of serious harm" to Mr. Anderson. *Id.* Specifically, it alleges that they were aware of his "suicidal tendencies," "threats," "thoughts," and "ideations." (Doc. # 37, ¶¶ 18, 21, 31, 37.) Therefore, the first prong of the test for a

personal participation deliberate indifference claim has been sufficiently alleged, a point which Defendants do not appear to dispute. Second, Ms. Anderson has adequately alleged that Defendants "disregarded" the risk of suicide, at least during the time at which Mr. Anderson was actually committing suicide. The Complaint alleges that more than twenty minutes passed between the beginning and end of Mr. Anderson's suicide attempt, during which none of the Defendants intervened, despite the facts that the occupant of a neighboring cell was calling for help and the cell was monitored by video surveillance. (Doc. # 37, ¶¶ 15-17.)

The third issue is whether the disregard shown to the risk of Mr. Anderson's death rises beyond the level of gross negligence to deliberate indifference.[5] *Harper*, 2010 WL 21179, at *4. Defendants cite case law indicating that various specific aspects of the Complaint would not, alone, state a claim for deliberate indifference. Some, as Defendants acknowledge, are cases in which jailers were unaware that a defendant was suicidal, and so shed little light on what a jailer must do once he is aware of a prisoner's suicidal tendencies. *E.g.*, *Edwards v. Gilbert*, 867 F.2d 1271 (11th Cir. 1989). As for the rest, Defendants are correct that the Eleventh Circuit has never held that a suicidal inmate must be checked on at any particular time interval, and has noted that the existence of video monitoring reflects a lack of deliberate indifference. *Cagle v. Sutherland*, 334 F.3d 980, 984, 990 (11th Cir. 2003). But the allegations in the Complaint are not based solely on the fact that Mr.

---

[5] The Supreme Court has described deliberate indifference as akin to "recklessness." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

13

Anderson killed himself after not having been checked on for a particular amount of time. Nor are they based on the bare fact that Mr. Anderson was able to commit suicide despite video monitoring. Rather, the complaint specifically alleges that Defendants did nothing, over a period of twenty minutes, even though (1) a neighboring inmate was calling for help, and (2) Defendants saw, or should have been able to see, the suicide attempt via video monitoring. The court does not read *Cagle* to hold that the mere presence of video equipment in a jail makes a finding of deliberate indifference impossible, even if the equipment is not monitored by (or what it shows is ignored by) jailers.

Further, the court notes that cases cited by Defendants were all at the summary judgment or post-trial stages, not in the motion to dismiss posture of this case. After discovery and full factual development, those cases were found not to state claims. But all Ms. Anderson must do here is *allege* that Defendants were deliberately indifferent. She has done so, and the court finds that she has adequately alleged a violation of Mr. Anderson's constitutional rights.

Because Defendants assert a qualified immunity defense, the claims against them must still fail if the right violated was not clearly established at the time of the events. The court has little trouble concluding that the alleged violation here was clearly established. *See Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1270 (11th Cir. 2005) (holding that, in the jail suicide context, "it was clearly established that an officer's deliberate indifference

to the risk of serious harm to a detainee is a violation of the Fourteenth Amendment"). Thus, qualified immunity does not provide a defense at this stage of the litigation.

The motions to dismiss with respect to Count IV (to the extent it states a personal participation claim against Defendant Welch) and Count VI are due to be denied.

### 3. State Law Claim

In Count III, Ms. Anderson asserts a wrongful death claim against all Defendants. *See* Ala. Code § 6-5-410. As Defendants have recognized, the governing law on the immunity of Alabama jailers from state-law claims changed during the briefing of these motions. *See Ex parte Shelley*, No. 1080588, 2009 WL 2997498 (Ala. Sept. 18, 2009); *LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009) (recognizing that *Shelley* "effectively overrule[d]" existing Eleventh Circuit case law on the subject). The court accordingly granted Defendants' motion to incorporate a portion of Defendants Parkett and Hill's summary judgment brief into Defendants Welch and Eason's earlier filed brief, and now considers only the arguments made in the Parkett and Hill brief as to all Defendants. (*See* Doc. # 52.)

The upshot of the recent decisions is that a claim of absolute immunity by Defendants to the state-law claim is no longer tenable. Defendants argue that they are nonetheless protected by state-agent immunity, which is an affirmative defense for state employees under Alabama law. *See Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000). Determining whether state-agent immunity applies requires a two-stage inquiry. First, a defendant must establish,

15

essentially, that he was acting in the discharge of his official duties as a state agent. It is not disputed that such was the case here. Second, the burden shifts to a plaintiff to show that the defendants "acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority." *Verret v. Ala. Dep't of Mental Health*, 511 F. Supp. 2d 1166, 1180 (M.D. Ala. 2007) (citing *Cranman*, 792 So. 2d at 402 n.13). Defendants argue that because Ms. Anderson had not sufficiently pled deliberate indifference as to her federal claims, and because the "recklessness" standard for deliberate indifference and *Cranman* state-agent immunity are "analogous," they are entitled to state-agent immunity on the wrongful death claim.

The court having concluded that Ms. Anderson *did* state a claim for deliberate indifference against three of the Defendants, little remains of this argument. The court is somewhat troubled, however, by equating "recklessness" with the apparently intentional conduct described in *Cranman* as defeating state-agent immunity, and with the fact that Ms. Anderson made no response to the state-agent immunity argument in her reply brief. Nonetheless, in light of the unsettled nature of the law post-*Shelley*, and the fact that the Complaint could fairly be read to allege that Defendants willfully stood by while Mr. Anderson committed suicide (*see* Doc. # 37, ¶¶ 15-17), the motion to dismiss is due to be denied at present. Whether Ms. Anderson's wrongful death claim can survive a state-agent immunity defense after discovery may be determined in due course. The motion to dismiss this claim will be granted with respect to Defendant Eason, however, for the same reasons as the Complaint failed to state a federal claim against him.

16

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1) Defendant Lee County's motion to dismiss (Doc. # 39) is GRANTED in its entirety, Counts I and II of the Complaint are DISMISSED, and Lee County is DISMISSED as a Defendant in this action;

(2) Defendants Welch and Eason's motion to dismiss (Doc. # 40) is GRANTED in part and DENIED in part. It is granted as to Defendant Eason in its entirety, and he is DISMISSED as a Defendant in this action. It is granted as to Defendant Welch to the extent he is sued in his supervisory capacity in Counts IV and V, but denied as to Count III and as to the extent he is sued for personal participation in Count IV;

(3) Defendants Hill ("Heil") and Parkett's motion to dismiss (Doc. # 47) is GRANTED in part and DENIED in part. It is GRANTED with respect to Count V, and Count V is DISMISSED in its entirety. It is DENIED with respect to Counts III and VI;

(4) To the extent Ms. Anderson continues to press official capacity claims against any Defendants, those claims are DISMISSED in conformance with the court's prior order (Doc. # 36), and;

(5) The Clerk of the Court is DIRECTED to amend the docket to reflect that the correct name of party "Sargent [sic] Parkett" is "Tim Parkett," and the correct name of "Corporal Heil" is "D'metrius Hill."

DONE this 11th day of February, 2010.

                                 /s/ W. Keith Watkins
                             UNITED STATES DISTRICT JUDGE